1832.

Robinson
v.
Smith.

## ROBINSON and others *vs.* SMITH and others.

Upon a bill filed, previous to the adoption of the revised statutes, by certain stockholders of an incorporated company against the individual directors for fraud and mismanagement in the execution of their trust, by which the property of the corporation was dissipated and lost: *Held*, that the corporation was a necessary party, either as complainant or defendant.

Where there has been a waste or misapplication of the corporate funds by the officers or agents of the institution, a suit to compel them to account for the loss should be in the name of the corporation, unless it appears that the directors of the corporation refuse to prosecute such suit, or the present directors of the company are the parties who have made themselves answerable for the loss.

The directors of a joint stock corporation, who wilfully abuse their trust or misapply the funds of the company, by which a loss is sustained, are personally liable as trustees to make good that loss; and they are also liable if they suffer the corporate funds to be lost or wasted by gross negligence and inattention to the duties of their trust. -

Independent of the provisions of the revised statutes, the court of chancery had jurisdiction, so far as the rights of the individual corporators were concerned, to call the directors to account, and to make satisfaction for losses arising from a fraudulent breach of trust.

A defendant can demur for want of proper parties only in those cases where it is apparent from the bill itself that there are other persons who ought to have been made parties; but if that fact does not distinctly appear upon the face of the bill, the objection of a want of parties must be made by plea or answer, showing who are the necessary parties, and making the objection in a plain and explicit manner.

The objection, by defendants who are officers of a corporation, that a discovery of the matters stated in the bill may subject the corporation to a forfeiture of its charter, is not sufficient to support a general demurrer, to the relief as well as to the discovery sought by the bill.

Demurrer *ore tenus* allowed upon payment of the costs of the demurrer on the record; but liberty was given to the complainants to amend.

April 17.    THE bill in this cause was filed by certain stockholders of the New-York Coal Company against the directors of that corporation, charging them with improper conduct in the management of their trust. The company was incorporated in April, 1824, with a capital of $200,000. By its charter the company was restricted from carrying on any banking business, and was limited solely to carrying on the business of exploring for, digging, and vending coal. (*Laws of* 1824, *p.*

1832.

Robinson
v.
Smith.

217.) The bill charged that the commissioners named in the act opened books for the subscription to the stock, and that the corporation went into operation in June, 1824, when T. L. Smith, M. Hoffman, J. Minturn, C. Lawton, W. F. Pell, F. Pell, W. Israel, S. Leggett and S. L. Governeur were chosen directors of the company. That T. L. Smith was elected president, and R. Abbot was appointed secretary. That soon after the company was organized, the directors purchased thirty acres of land, supposed to contain a coal bed, for which they paid $13,000. That they procured from the land about 3000 bushels of coal, which they took to the city of New-York as a sample. That some time in the course of the same year they sold the land, and, as the bill alleged, they had never since employed the funds of the company for the purpose of carrying on the business of exploring for, digging or vending coal. The bill further stated, that since that time the directors of the company had used and employed their funds almost exclusively in the purchase and sale of the stocks of various corporations and institutions. That they came to a determination to purchase a majority of the stock of the City Bank, and did by their agent purchase 16,000 shares of the stock of that bank at a premium of from two to nine and a half per cent. That they pledged the same to individuals to raise money thereon, at about 90 per cent. upon the par value of the stock, and paid the difference out of the funds of the coal company; and that the individuals to whom the bank stock was pledged, gave to the agent of the coal company their proxies to vote for directors of the bank. That the company ordered its agent to vote for T. L. Smith, C. Lawton, W. F. Pell, and others, as directors of the bank; that he did so vote, and that they were accordingly elected such directors on the first Monday of June, 1825. That the stock of the City Bank was afterwards sold at a loss of from 10 to 20 per cent., by which the coal company lost $50,000. The bill also charged that this operation of the directors of the coal company was to subserve their private purposes, and was in violation of their known duty as directors of the company. The bill further charged that the directors of the coal company also purchased 1500 shares of the New-York Gas Light Company, at a premium of from 80 to 100 per cent.; 1000

1832.

Robinson
v.
Smith.

shares of the New-York and Schuylkill Coal Company, at an advance or premium of from 10 to 30 per cent. ; 1500 shares of the Bank of America, at a premium of from 3 to 8 per cent. ; 1000 shares of the Jersey City Bank, at a premium of from 12 to 25 per cent. ; 1500 shares of the Mercantile Insurance Company, at a premium of from 8 to 12 per cent. ; 1000 shares of the Franklin Fire Insurance Company, at a premium of from 8 to 20 per cent. ; and 1500 shares of the Brooklyn Gas Light Company, at a premium of 7 per cent. That a portion of the said stocks had been since sold, and on which the company sustained a loss of about $62,000, exclusive of the loss on the City Bank stock. That a considerable portion of the stocks thus purchased had not been re-sold, and were greatly diminished in value. That the whole amount of these and other stocks purchased by the directors, or in which the company was interested, amounted to nearly two millions of dollars. By which dealings the directors caused a loss to the coal company of not less than $150,000, and thereby rendered its stock of very little value. The bill further charged that the amount of debts owing by the coal company during a part of the time when these stock speculations were going on, exceeded fifteen times the amount of the capital paid in. The president and secretary were also made defendants ; the bill charging that the books and papers of the company were in their possession. The complainants prayed a discovery and for general relief.

The defendant F. Pell put in a general demurrer to the bill for want of equity. The other defendants put in a general and special demurrer. And for causes of demurrer, they stated that it appeared by the bill : that the complainants were owners of their stock in severalty, and had no joint interest therein ; that the capital stock of the company was 4000 shares, and that the complainants were owners of only 160 shares. They therefore insisted that the owners of the other shares should have been made parties.

*C. G. Troup & G. F. Tallman,* for the defendants. The bill should have been filed in the name of the corporation as complainant. Although a party may have an interest in a question involved in a suit, it does not follow he can be a prop-

er party in the first instance. For instance, a corporation should first commence a suit for an injury to all the corporators ; if it neglects to do so, then one of the corporators can sue. A different rule would lead to a multiplicity of suits. So, in England, the assignees of a bankrupt should first sue for a debt due the bankrupt ; if they should fail to sue, then one of his creditors is permitted to commence the suit. The same rule exists in the case of a mortgage assigned for the benefit of creditors, and in the case of a testator or intestate dying, leaving debts. (6 *Vin. Abr.* 304, tit. *Corporations. Rex* v. *Clark,* 1 *Say. R.* 226. *Broke's Abr.* tit. *Corporations,* pl. 24. *Cooper's Eq.* Pl. 174. *Alsager* v. *Rowley,* 6 *Ves. jun.* 749. *Burroughs* v. *Elton,* 11 *Id.* 35. *Doran* v. *Simpson,* 4 *Id.* 665. 3 *Merivale,* 463.) At least all the stockholders should have united with the corporation in filing the bill, or some of the stockholders should have filed the bill for themselves, and for all others who might elect to come in under the decree. The latter mode is adopted where it is impossible that all the stockholders should become parties, on account of the absence of some, or the inconvenience arising from their great number. (*Adair* v. *New River Co.,* 11 *Ves.* 444. *Cockburn* v. *Thompson,* 16 *Id.* 326.) The bill should have stated the excuse for not making all the stockholders parties. (*Mosely,* 85. *Bowyer* v. *Covert,* 1 *Vernon,* 95. *Mitf.* Pl. 134. 1 *Montague on Pl.* 65. *Prec. in Ch.* 592.) The complainants should have set forth their rights clearly, and stated time, place and circumstance. This was necessary for the information of the defendants, that they might have known whether to answer, plead, &c. It was necessary also to enable the defendants to plead res adjudicata in another suit. This objection goes to the equity of the bill. Uncertainty in the bill may be objected on demurrer. (*Cooper's Eq.* Pl. 181. *East India Co.* v. *Henchman,* 1 *Ves. jun.* 287. 3 *Meriv.* 170, 3. *Cathcart* v. *Lewis,* 3 *Brown's Ch. Cas.* 516. *Elmendorf* v. *De Lancey,* 1 *Hopk. R.* 556. *City of London* v. *Levy,* 8 *Ves.* 400.) The defendants are not now directors, and cannot therefore be called to account as such. In the case of *The Attorney General* v. *Carmarthen,* (*Cooper's Rep.* 31,) Lord Eldon doubted whether

chancery could interfere where a corporation had misapplied its funds. In *The Attorney General* v. *The Utica Ins. Co.* (2 *John. Ch. Rep.* 374, 384,) Chancellor Kent expresses similar doubts. As to the implied powers of a corporation, see the case of *Sutton's Hospital,* (10 *Co.* 30, *b.*) There may be a demurrer to the whole bill, and also a demurrer *ore tenus.* Want of parties, although no objection to a prayer for discovery merely, yet it is so to a prayer for relief. Defendants are not bound to make any discovery which may lead to a forfeiture. (*Cooper's Eq. Pl.* 207.) Parties are not bound to discover any fact which would form a link in the chain of proceedings on a quo warranto. This court has no jurisdiction of this case, it being a case of a fraudulent application of the funds. (2 *Mad.* 61. 3 *Black. Comm.* 431. *King* v. *Watson,* 2 *T. R.* 199. *Attorney General* v. *Earl of Clarendon,* 17 *Ves.* 491. *Act incorporating The Farmers and Fire Ins. and Loan Co., Laws of* 1822, *p.* 52. *Laws of* 1825, *p.* 448. 2 *R. S. pt.* 3, *ch.* 8, *tit.* 4.)

The court of chancery in England assume jurisdiction only over charitable corporations. The lord high chancellor is the visitor of charitable corporations; and the king, through the king's bench, is the visitor of civil corporations. (*Attorney General* v. *Talbot,* 1 *Ves. sen.* 78. 3 *Atk.* 673, *S. C. Attorney General* v. *Reynolds,* 1 *Eq. Cas. Abr.* 131.) The cases cited by the learned counsel from the English books were cases of charitable corporations. In the case of *The Attorney General* v. *The Utica Ins. Co.* (2 *John. Ch. R.* 389,) Chancellor Kent does not lay down the rule broadly, that the directors of a corporation would be personally liable; he confines the rule to extreme cases, where its application would be necessary to check an abuse of powers or trusts. The remedy referred to is by injunction. No case can be found where directors have been made personally liable as trustees. (2 *Mad. Chan. Practice,* 61. 1 *Blackstone's Comm.* 481. *Cooper's Rep.* 30. *King* v. *Watson,* 2 *Term Rep.* 199.) The discussion in the legislature during the revision of the laws, whether the directors should be made personally liable to the creditors of the corporation or to the stockholders, shows that the understanding of the law previous to that time was, that directors were not so liable. (*See Notes of Revisors to pt.* 3, *ch.* 8, *tit.* 4, *of*

*the Revised Statutes.*)   The complainants, to succceed in this case, must establish the jurisdiction of the court and the personal liability of the directors.   There was no provision in the charter of their company making the directors personally liable to the stockholders and creditors, as was the case in the charter of the Life and Fire Insurance Company.   The revised statutes have conferred upon the court of chancery the power of suspending or removing trustees, and of preventing their alienation of the trust property.   If the defendants as directors were trustees, they were trustees of the corporation, not of the corporators individually ; and they can only be liable to the corporation.   And if trustees, they were only so from the time they were appointed directors, and not as to acts previously done.   The bill does not allege that the acts complained of were committed while the defendants were directors ; this was necessary.   The complainants should have averred that they did not assent to such acts, and were ignorant thereof at the time they purchased the stock.   They remained quiet until they saw the operations now complained of prove unsuccessful, and then they filed their bill and called for an account.   All the persons interested have not been made parties.   It is important to settle this controversy in one suit.   Either all the stockholders must be made parties, or the bill must be filed by a part in behalf of themselves and the others who may choose to come in under the decree. (*Lay* v. *Thomas,* 2 *Ves. sen.* 312.   2 *Mad. Ch. Pr.* 144.   *Adair* v. *New River Co.,* 11 *Ves.* 444.   *Good* v. *Blewitt,* 13 *Id.* 397.   *Moffatt* v. *Farquharson,* 2 *Brown's Ch. Cas.* 338.   *Brown* v. *Ricketts,* 3 *John. Ch. Rep.* 553.   *Davoue* v. *Fanning,* 4 *Id.* 109.)   In the case of *The Attorney General* v. *The Utica Ins. Co.* (2 *John. Ch. R.* 374,) the chancellor refused to decide the case until all the parties were brought before the court.   Here the complainants have no joint interest.   The defence may be different to the claims of the several complainants.   The complainants having separate rights, cannot be united in the same suit.

*G. Griffin,* for the complainants.   A stockholder may call upon the directors in a court of chancery to account in a proper case ; although in certain cases, we might proceed in the

1832.

Robinson
v.
Smith.

name of the people, by a quo warranto or mandamus, or in the name of the corporation ; yet we are not compelled to do so. Suppose the delinquent directors should have the control of the corporation ; it would not be in our power to use the name of the corporation. Any stockholder who is aggrieved, may, for himself alone, proceed in chancery against the directors. He is one of the cestui que trusts, and the directors are the trustees. This question first came up in *Ogden* v. *Kip*, (6 *John. Ch. Rep.* 160.) There the injunction prayed for was refused ; not because the chancellor had no power, but because a case was not made out sufficiently strong to warrant it. The same doctrine was held by Chancellor Kent, in *Attorney-General* v. *Utica Ins. Co.* (2 *John. Ch. R.* 389.) In that case the chancellor calls the directors trustees, and states a case like that of these complainants', in which chancery would interfere, upon the ground of the directors being trustees. The same points were taken in *The Charitable Corporation* v. *Sutton*, (2 *Atk. Rep.* 400,) as in this case. Lord Hardwicke there said, that in every case of a breach of trust by men either in private or public capacities, he would interfere, where the grievance was intolerable. There is no effectual mode of correcting the evil other than by a suit in chancery against the directors as trustees ; subject them to personal liability, and then the grievance will be remedied. (*Good* v. *Blewitt*, 13 *Ves.* 397. *Lloyd* v. *Loaring*, 6 *Id.* 772. *Adley* v. *The Whitstable Co.* 17 *Id.* 315. 1 *Meriv.* 107.) If there is no remedy in chancery, directors may set the stockholders at defiance. Such a doctrine would be against conscience and public policy. We have made a case sufficiently strong to call for the interference of the court. Directors must be held personally liable to stockholders for fraud and gross negligence ; for an utter recklessness and disregard of the interests of the corporation ; for a wanton departure from the objects of the institution ; for gross misapplications of the funds ; or for their total abstraction from the objects of the corporation for the individual benefit of the directors. We seek to recover against the defendants for their depredations. They have been guilty of stock jobbing in its wildest forms. Three stockholders have united as complainants. The objection that we have united distinct causes of

action in one suit is not founded upon fact. The complainants have like causes of action. It could not have been necessary to have filed three bills. The injury complained of was committed during the administration of the defendants as directors. Chancery has jurisdiction over corporations to compel them to account. (1 *Mad. Ch. Pr.* 93. *Adley* v. *Whitstable Co.* 17 *Ves.* 315. 1 *Meriv.* 107. *Attorney-General* v. *Governors of the Foundling Hospital*, 2 *Ves. jun.* 44. *Caffrey* v. *Darby*, 6 *Id.* 488. *Fellows* v. *Fellows*, 4 *Cow. Rep.* 710.) The number of parties uniting in a suit is no objection, provided they have the same interest involved in the issue, or one connected interest centering in the point in issue. (*Brinckerhoof* v. *Brown*, 7 *John. Ch. Rep.* 217. 2 *Mad. Ch. Pr.* 234. 2 *Anstruther*, 469, 477.) The defendants upon demurrer cannot object that an answer would subject them to pains and penalties. But what are the pains and penalties, of which these defendants are in danger ? No other than the payment of money. The complaint here is of a misapplication of the funds of the corporation. The forfeiture of the charter is no peculiar pain and penalty upon the defendants. It is equally so upon the complainants. A pain and penalty is fine and imprisonment. It is objected also, that all the necessary parties are not made complainants. It does not appear from the bill that there are any other stockholders but the complainants and defendants. The chancellor cannot presume there are other stockholders. The statute does not prescribe a particular number. The parties before the court may have purchased all the stock. A demurrer, for want of proper parties, must show affirmatively who ought to be the parties. This rule is by analogy to a plea of abatement at law. (*Wiser* v. *Blachly*, 1 *John. Ch. R.* 437.) But if the persons interested in the event of the suit were numerous, it was not necessary to make all of them parties. This would have led to multiplicity. The case of *Chancey* v. *May*, (*Prec. in Ch.* 592,) sanctions the form of this bill. Stockholders are not tenants in common ; and they are not compelled to join in a suit unless they choose. This is a case of a distinct and separate injury to each stockholder. It is a case where the stockholders may elect to join or not. The clause as to filing the bill for the complainants and

others, was stricken out in this case by an eminent counsel. The rule that multifarious matters shall not be joined in the same suit, is a rule of convenience. (*Per Colden, Senator, Fellows* v. *Fellows,* 4 *Cowen's R.* 710.) The objection against answering upon the ground of exposure to pains and penalties, is not favored. (*Wendell* v. *Van Rensselaer,* 1 *John. Ch. Rep.* 350.) Where this excuse is set up, the party must answer as far as he can. Nonjoinder of parties is not a fatal objection. In *Ogden* v. *Kip and others,* (6 *John. Ch. Rep.* 160,) the chancellor, by implication, admits the right of the stockholders to proceed against the directors, in a case of emergency. In *Adley* v. *The Whitstable Co.* (17 *Ves.* 315,) a corporator was allowed to proceed for an account against the corporation. Chancellor Kent, in *Attorney-General* v. *Utica Ins. Co.* (2 *John. Ch. Rep.* 389,) held, that if directors diverted the funds of the corporation, chancery would have a right to interfere.

THE CHANCELLOR. Before I proceed to examine the merits of this case, it may be proper to refer to the causes assigned as special grounds of demurrer. And first, it is said there are other stockholders who ought to be made parties. Where it is not apparent from the bill itself that necessary parties are omitted, it can be taken advantage of only by plea or answer; showing who are the necessary parties, and making the objection of a want of parties in a plain and explicit manner. (2 *Paige's Rep.* 280. 1 *Monro's Kent. Rep.* 107. 1 *A. K. Marsh. Rep.* 112. 1 *Hogan's Rep.* 70.) The defendants can demur only when it is apparent from the bill itself that there are other persons who ought to have been made parties. And the demurrer should show who are the proper parties. It is true the capital stock of the corporation is, by the charter, to consist of 4000 shares; and the complainants own but 160. But it also appears from the act of incorporation, that the defendants who were directors must also have been stockholders. And from aught that appears to the contrary, they may now be the owners of all the residue of the stock subscribed.

The objection for multifariousness cannot be sustained. All of the complainants are cestui que trusts, having similar inter-

ests, in every respect, and arising out of the same trust. They are seeking precisely the same redress against their trustees, and for the same acts; by which they allege they have received a similar and common injury. There is, therefore, no good reason for requiring them to file separate and distinct bills. It is a favorite object of this court to prevent a multiplicity of suits. And where several persons have a common interest, arising out of the same transaction, although their interest is not joint, even the defendant may sometimes insist that they shall all be made parties, that he may be only subjected to the trouble and expense of one litigation. Upon the principle of the decision of this court, in *Brinckerhoff* v. *Brown,* (6 *John. Ch. Rep.* 139,) the complainants were authorized, if not required, to join in this suit.

The objection that a discovery may subject the company to a forfeiture of its charter, is not sufficient to support this general demurrer to the whole bill, both as to the discovery and relief, even if it would have authorized a demurrer to the discovery of particular facts. Under the provisions of the revised statutes, the defendants may be compelled to make a discovery, in certain cases, although it may subject the corporation to a forfeiture of its corporate rights. (2 *R. S.* 465, § 52.)

If the allegations in this bill are true, there is no doubt that the directors of this company were guilty of a most palpable violation of their duty, by engaging in this gambling speculation in stocks, which was wholly unauthorized by their charter; and which the bill alleges was carried on to subserve their own individual interests and purposes. I have no hesitation in declaring it as the law of this state, that the directors of a monied or other joint stock corporation, who wilfully abuse their trust, or misapply the funds of the company, by which a loss is sustained, are personally liable as trustees to make good that loss. And they are equally liable, if they suffer the corporate funds or property to be lost or wasted by gross negligence and inattention to the duties of their trust. Independent of the provisions of the revised statutes, which were passed after the filing of this bill, this court had jurisdiction, so far as the individual rights of the corporators were concerned, to call the directors to account; and to compel them to make sat-

isfaction for any loss arising from a fraudulent breach of trust, or the wilful neglect of a known duty.    To this extent Chancellor Kent, in the case of *The Attorney-General* v. *The Utica Ins. Co.* (2 *John. Ch. Rep.* 389,) admitted the court had jurisdiction; although he doubted the general powers of this court over the corporation itself to prevent an abuse of its corporate privileges.    Until very recently, but few incorporated companies, in which individuals had any direct pecuniary interest, existed in England, except corporations for charitable purposes. And this court would very reluctantly interfere with the concerns of mere municipal corporations, where a sufficient remedy is afforded, by mandamus or quo warranto, or by an indictment against the officers of the corporation, for any abuse of their powers by which the public has sustained an injury.  But since the introduction of joint stock corporations, which are mere partnerships, except in form, the principles which were formerly applied to charitable corporations in England, may be very appropriately extended to such companies here.  The directors are the trustees or managing partners, and the stockholders are the cestui que trusts, and have a joint interest in all the property and effects of the corporation. (*See Wood's Inst. B.* 1, *ch.* 8, *p.* 110.  11 *Coke's Rep.* 98, *b.*)  And no injury the stockholders may sustain by a fraudulent breach of trust, can, upon the general principles of equity, be suffered to pass without a remedy.    In the language of Lord Hardwicke, in a similar case, "I will never determine that a court of equity cannot lay hold of every such breach of trust.    I will never determine that frauds of this kind are out of the reach of courts of law or equity; for an intolerable grievance would follow from such a determination." (2 *Atk. Rep.* 406.)    The demurrers on the record are therefore not well taken, and should be overruled.

The defendants have, however, assigned as causes of demurrer, *ore tenus*, that it is not alleged in the bill that the corporation, by its officers, refused to sue, or that the defendants are the present directors, having the control of the corporation; and that therefore the suit should have been in the name of the corporation.    That even if a sufficient excuse is shown, by the bill, for bringing the suit in the name of the stockholders, the corporation should be before the court as a party defend-

ant. I think at least one of these objections is well taken ; and that the corporation should be before the court, either as complainant or as a defendant.

Generally, where there has been a waste or misapplication of the corporate funds, by the officers or agents of the company, a suit to compel them to account for such waste or misapplication should be in the name of the corporation. But as this court never permits a wrong to go unredressed merely for the sake of form, if it appeared that the directors of the corporation refused to prosecute by collusion with those who had made themselves answerable by their negligence or fraud, or if the corporation was still under the control of those who must be made the defendants in the suit, the stockholders, who are the real parties in interest, would be permitted to file a bill in their own names, making the corporation a party defendant. And if the stockholders were so numerous as to render it impossible, or very inconvenient to bring them all before the court, a part might file a bill, in behalf of themselves and all others standing in the same situation. (*Hichens* v. *Congreve,* 4 *Russ. R.* 562.) Although the revised statutes have provided for cases of this kind in future, this bill cannot be sustained, unless it is made to conform to the law as it existed at the time the suit was commenced.

The demurrer *ore tenus* is therefore allowed, upon payment by the defendants of the costs of the demurrer on the record. (*Attorney-General* v. *Brown,* 1 *Swanst. Rep.* 288. *Durdant* v. *Redmond,* 1 *Vern.* 78.)[a] But the complainants are to be at liberty to amend, as they may be advised.

(a) A demurrer *ore tenus* appears to be in the nature of a new demurrer to the same part of the bill which was before demurred to. And it is allowed in this form, upon the argument of the demurrer on record, to prevent injustice ; as the defendant cannot again be allowed to demur to the same matter in any other way. (*See* 11 *Ves. Rep.* 70.)