# CASES

IN THE

# SUPREME JUDICIAL COURT,

IN THE

COUNTY OF LINCOLN, MAY TERM, 1841.

---

## JOHN EVANS *vs.* WILLIAM CHISM, 2*d*, & *al.*

If the testimony of a witness has a tendency to lighten a burden which the same testimony has first placed upon him; or if it has the effect to enable the party calling him to obtain his rights so perfectly from the other party to the process as to leave him less interested to proceed against the witness, and at the same time raises a liability to the adverse party on a covenant of special warranty sufficient to counterbalance it; these being matters not of certain interest in the event, affect the credibility, not the competency of the witness.

The Court will not, in a bill in equity, as a general rule, proceed to a decree, until all parties whose rights are to be affected, are before it; but if the want of proper parties be not apparent on the face of the bill, and be not presented by a plea or answer; and the Court does not perceive that it cannot proceed, and by a final decree do justice to all parties before it without affecting the rights of others, it will not regard the objection.

Courts of equity do not consider any of the provisions of the statute of frauds as violated by giving effect to a trust, not originally created, but afterwards proved or admitted to exist, by some written document; and will protect the rights of a party so proved to be equitably interested.

If a party take a conveyance of land with knowledge of the equitable rights of others thereto, he will not be considered in a court of equity as a *bona fide* purchaser, and will be adjudged to hold subject to those equitable rights.

BILL in equity, heard on bill, answers and proof. *Evans* states in his bill, that he was seized of the premises in question, and on *Jan.* 11, 1826, mortgaged the same to one of the respondents and the father of the other, whose title he claims; that the mortgagees in *June* following assigned the mortgage to *Lithgow*, who sued

the mortgage, obtained judgment, and entered under it to foreclose; *Aug.* 24, 1832, and on *March* 10, 1833, reconveyed to the respondents; that on *July* 15, 1833, *Evans* demanded an account which was refused, and on *August* 21, 1835, tendered the amount due on the mortgage, which was not received; that *Chadwick* recovered judgment against *Evans*, procured the equity of redemption to be sold *June* 7, 1828, for $85,23, and became himself the purchaser; that during the year ensuing, *Evans* made an arrangement with *John Bartlett* and *Act Plummer* to pay *Chadwick* and redeem the land; that they paid or secured *Chadwick*, and on *June* 15, 1829, by consent of parties, *Chadwick* gave to *Bartlett* and *Plummer*, his deed of release as collateral security for the money by him advanced for *Evans*; that *Evans* afterwards repaid to them the money advanced for him, and the deed from *Chadwick* to them not having been recorded, it was understood and believed by all concerned that a delivery of the same deed to *Evans* would be equivalent to a delivery back to *Chadwick*, and a new one from him to *Evans*, and thereupon the deed was so delivered to *Evans* with the intention to restore to him his rights to the land by way of redemption of the equity sold to *Chadwick*; that all these proceedings were had before the defendants pretended to have acquired any interest in the equity; that the respondents, with the intention to defraud *Evans*, *Oct.* 21, 1833, applied to *Chadwick* to give them a deed, well knowing all the facts, and that *Chadwick* at length gave them a deed of that date, at the same time stating; that he had before conveyed the same to *Bartlett* and *Plummer*; that *Nov.* 9, 1833, *Bartlett* made a deed of his pretended right to one of the respondents, and on *Aug.* 4, 1835, *Plummer* made a similar one to the other, each being given for a nominal consideration only, and both respondents having been distinctly informed by *Bartlett* and *Plummer*, that they had no interest in the land; and that the aforesaid deeds to the respondents were fraudulently procured by them.

The substance of the answers, and the facts in the case, sufficiently appear in the opinion of the Court.

*Mellen* and *Reed* argued for the complainant, and contended, that the depositions of witnesses objected to, ought to be received; that the facts alleged in their bill were proved; that they were en-

titled to relief thereupon ; and that the attempt set up by the re-spondents, had wholly failed. They cited. *Webber* v. *Webber*, 6 *Greenl.* 127 ; *Royce* v. *Burrell*, 12 *Mass. R.* 395 ; 1 *Story's Eq.* § 61 ; 2 *ib.* § 1195 ; 10 *Ves.* 581 ; 3 *Mason*, 347.

*F. Allen* and *Abbott* argued for the respondents. The grounds urged by them in defence, appear in the opinion of the Court.

The opinion of the Court thereon was by

. SHEPLEY J. — The plaintiff on the eleventh day of *January*, 1826, conveyed in mortgage to one of the respondents and to the father of the other the premises, which he now claims to redeem. On the first day of *June* following the mortgage was assigned to *Lithgow* who entered under a judgment for condition broken on the twenty-fourth day of *August*, 1832 ; and on the tenth day of *March*, 1833, conveyed to the respondents. On the seventh of *June*, 1828, the plaintiff's right to redeem the estate was sold to *Chadwick*, who on the fifteenth of *June*, 1829, consented to receive his money paid for it and to convey it by a release deed to *John Bartlett* and *Act Plummer*. *Chadwick*, *Bartlett* and *Plummer*, have all released their rights to the respondents or to one of them. The plaintiff alleges, that these releases were made and received with a knowledge, that he then had an equitable right to the equity of redemption, and that they cannot therefore be set up against him. And he proposes to prove it as well by *Bartlett* and *Plummer* as by other witnesses. And the first objection taken by the respondents is to their competency to testify. It is not perceived, that they are interested in the event of this suit. The decree cannot be evidence in any litigation between the plaintiff and them. If their testimony can be said to lighten a burden, it is only one, which the same testimony has first placed upon them. If it should have the effect to enable the plaintiff to obtain his rights so perfectly from the respondents as to leave him less interested to proceed against them, it may also raise a liability to one of the respondents on their covenants of special warranty quite sufficient to counterbalance it. These, being matters not of certain interest in the event, affect their credibility, not their competency.

Another objection is, that they should have been made parties to the bill. The rule is, that all persons are to be made parties,

who are legally or beneficially interested in the subject matter and result of the suit. That the Court will not proceed to a decree until all parties, whose rights are to be affected, are before it, is also a general rule subject to certain exceptions. But if the want of proper parties be not apparent on the face of the bill and be not presented by plea or answer; and the Court does not perceive that it cannot proceed and by a final decree do justice to all parties before it without affecting the rights of others, it will not regard the objection. *Robinson* v. *Smith*, 3 *Paige*, 222. *Bartlett* and *Plummer* have parted with all their rights to the estate, and have no such interest to be affected by a decree, as prevents the Court from doing justice between the parties now before it.

These questions being disposed of the rights of the parties are presented on the merits. *Bartlett* and *Plummer* both state in substance, that they received the deed from *Chadwick* as security, and agreed upon the plaintiff's paying the money for which they were liable, that the estate should return to him. This they seem to have erroneously supposed would take place by their delivering to him the deed from *Chadwick*, or if not by his surrendering it to *Chadwick* and taking a deed from him. It appears, that the plaintiff paid to *Weeks* all but a small sum, and that he paid to *Bartlett*, who paid it to *Weeks*. And that the deed from *Chadwick* to *Bartlett* and *Plummer* was in fulfilment of that agreement, delivered to the plaintiff in the year 1832; and he thus became equitably entitled to the estate, subject to the mortgage. The legal title remained in *Bartlett* and *Plummer*, and there is a full admission in writing signed by them, that they no longer had any beneficial interest in it. Courts of equity have not considered any of the provisions of the statute of frauds as violated by giving effect to a trust not originally created, but afterward proved or admitted to exist by some written document. And they have protected the rights of a party so proved to be equitably interested. *Foster* v. *Hale*, 3 *Ves.* 696; *Steere* v. *Steere*, 5 *Johns. Ch. R.* 12; *Rutledge's Adm'r* v. *Smith's Ex'r*, 1 *M'Cord's Ch. R.* 119. If the respondent, *William Chism*, can be regarded as a *bona fide* purchaser of the equity for a valuable consideration and without notice of the trust, he may set up that title against any equitable interest, which the plaintiff can establish. He states in his answer

that " he was in no way privy to any obligation, that said *Plummer* and *Bartlett* were under to convey the same to said *Evans*, but he supposed, that said *Plummer* and *Bartlett* had the legal and equitable title to said equity of redemption." He could not acquire any interest by the release of *Chadwick*, for the deed declared, that he had before conveyed to *Bartlett* and *Plummer*. And when he obtained the release from *Bartlett* on the nineteenth of *November*, 1833, he was informed by him, that he had no interest in the land. About twenty days before the right to redeem would be extinguished by lapse of time, he obtained on the fourth day of *August*, 1835, a release from *Plummer*. He had employed an assistant, and had applied a number of times before he obtained it, and was informed by him, that he had no right, and that he had given up the deed to *Evans*. And his assistant, *Jones*, was informed, that he had offered to convey to *Evans* for ten dollars, and that *Evans* insisted, that four dollars only ought to be paid to him. *Plummer* says, that *Chism* insisted on a quitclaim deed, and at last he gave him one and told him he had no right or title, and if he took it, he must run his own risk. What then in fact was *Chism's* knowledge? He knew, that the plaintiff had owned the estate and mortgaged it to him and his father, that his right to redeem was sold to *Chadwick*, who had conveyed to *Bartlett* and *Plummer*, and that they did not pretend to have at that time any interest in it, and had surrendered their deed to the plaintiff; and that the plaintiff claimed to have a release on the payment of four dollars. And the conclusion must follow, that so far as they were concerned, the right was equitably at least in the plaintiff. And how can his answer be respected, which states, that he supposed that *Plummer* and *Bartlett* " had the legal *and equitable* title?" When he concluded to pay one hundred dollars for it, he did it with a knowledge of all these facts. The testimony of *McDaniel* and *Glidden*, taken in connexion with the other testimony, and with the whole course of conduct on the part of the plaintiff, is not sufficient to satisfy the mind, that he designed to permit *Plummer* to sell to *Chism* without his being a party to the sale, and the one to receive the benefit of it. *Plummer* does not and did not profess to sell under such a license.

The respondents cannot therefore be considered as *bona fide*

purchasers of the equity without notice ; and they must be adjudged to hold it subject to the equitable rights of the plaintiff. *Daniels* v. *Davison*, 17 *Ves.* 433 ; *Wadsworth* v. *Wendell*, 5 *Johns. Ch. R.* 231. They did not acquire any title to it under the sale of *John Plummer;* for that was made on the sixteenth day of *July*, 1831, before the plaintiff had obtained even an equitable title by the final payment of the money to *Weeks.* At that time the legal as well as the equitable title was in *Bartlett* and *Act Plummer*, and nothing passed to *John Plummer* by the sale on his execution.

The tender was made in season and was apparently sufficient. A decree is to be entered, that the plaintiff is entitled to redeem, and that the respondents, upon payment of the amount which shall be found due to them on an adjustment of the account for rents, profits, and expenditures, convey all the title which they have acquired to him. A master is to be appointed to take the account and the case is in all other respects reserved for further hearing until his report shall come in.