Tappen, J.
The plaintiff alleges that he is a stockholder and the owner of fifty shares of stock in the defendants’ company; and he brings this action for the purpose of obtaining an injunction against the corporation, its directors and officers, in respect to the mode of investment of certain moneys, known as the surplus fund. It is alleged by the plaintiff, that this surplus fund amounts to a sum exceeding three millions of *374 dollars; that it has been invested heretofore in government securities principally, and that the defendants’ officers are now investing a large portion of it in securities of "less value and of a fluctuating character; that such loans are made on call and some on time; and that the moneys are jeopardized, in respect to their security, by the mode of investment pursued by the defendants’ officers, who are also brought in and made defendants in this action.
The chief questions presented are, whether the court should, by injunction, interfere to prevent certain modes of investment; whether it should direct investments in one or more ways and prohibit them in others; whether, in the absence of any prohibition or limitation of law, the directors are not invested with certain discretionary powers as the representatives of the stockholders, for the purposes of managing the affairs of the company and all of its transactions ; and, finally, whether the directors may exercise this discretionary power of investment without being expressly authorized by statute in respect to the class and quality of the securities to be' taken therefor. The equity powers of the court are to be exercised with great care, and particularly is this the case in respect to the granting and continuing of injunctions, and a case free from doubt on the law and the facts should be established in order to justify the exercise of this power; and where an adequate remedy is otherwise afforded by the law, either by an action for damages or by a change in the board of officers, by removal or suspension under the provisions of the statute, an injunction ought not to be resorted to.
The defendants’ corporation was chartered in the State of ¡New York, by chapter 366 of the Laws of 1848, for the purposes of navigation and commerce, as specified in the act of incorporation—to which was added in the first section, “all necessary and incidental pow *375 er is hereby granted, and all contracts may be'either verbal or with the signature of the president and secretary, and with or without coiporate seal.”
The eighth section authorizes the directors to appoint president and other officers and agents, and bylaws are authorized for the government of the corporation and the manner of its business ; and by the fourteenth section, the corporation is to possess the general powers and privileges and is subject to the general restrictions and liabilities prescribed by the Revised Statutes' in respect to corporations. Corporate bodies of this character have long been known to the law.
The Roman law created secular corporations which included companies composed of merchants embarking in commercial adventure ; and the spirit of commercial enterprise aided the establishment or the preservation of great centers of trade, of people,, and of business, in the towns and cities of the old world.
These commercial enterprises were at the hazard of the fortunes of those who invested in them, and great privileges and monopolies were conferred by governments to induce this hazard, in the hope that the enterprise would be successful and would thereby benefit not only those who embarked in them, but also the State and the nation.
The earliest noted instance of this character was the Bank of Yenice, which was chartered as early as the twelfth century, although classes of individuals were known much earlier, who associated themselves together to engage in trade and in commercial adventures requiring large capital.
In later times, and at the present day, numerous instances are presented of great enterprises set on foot by means of an aggregation of capital which could be obtained in no other way than by means of a chartered company, and the contributions of a multitude of shareholders.
*376 Speaking of private corporations, Chancellor Bland, of Maryland, says (3 Bland O/i., 407): “There is no instance of the creation of any such body under the provincial government, but since the establishment of the Republic, they have largely increased.”
A corporation is created and franchises are granted to promote the public interest; the shareholders accept the grant and invest capital for the purposes of legitimate profit, and they put that capital at the risk and hazard of the business. And herein there is some difference to be recognized between corporations and their capital or assets embarked in business enterprises, and a trust or trust fund, pure and simple, wherein the primary object is safety, and the secondary object profit.
The chancery or x equity rules for investments of this latter character have not been usually applied to corporate bodies, -whose profits depend upon their own management of their own affairs; although, where their officers or directors, under pretense of managing the business, violate any provision of law, or embark in undertakings wholly foreign to the objects of the incorporation, the court will, in such case, enforce a suitable and wholesome restraint; and in such cases, also, a complaining stockholder may invoke the action of the State through the attorney-general, for the removal or suspension of any officers or directors (Laws of 1870, ch. 151). And corporations, like private persons engaged in trade, must within the law be left to manage their own affairs subject to that law, and to the enforcement of those statutory rules which obtain in equity. In this case it is not alleged that* there is any loss arising from the business of the company transacted in the mode complained of by the plaintiff; on the contrary, it appears that .a large profit has been realized during the period of three or six months embraced in the statement submitted, and although al *377 leged yet it does not appear that any express provision of law is violated.
If fraudulent or illegal acts are alleged against officers or directors, an action for damages may be maintained against them by a stockholder, in addition to the proceedings for suspension required by statute (12 How. Pr., 19).
Where directors have committed a breach of trust, or by making a contract of guarantee on behalf of the corporation which they were not empowered to make by charter, or have committed other clear excess of chartered powers, they have been restrained by injunction (Bradshaw v. Eastern Counties Railway, 7 Hare, 114; Mauders v. Commercial Bank, 28 Penn., 379).
And it is the law that directors are regarded as trustees of stockholders (Robinson v. Smith, 3 Paige, 233), and they may be called to account for waste or misapplication of corporate funds (Cumberland Coal Co. v. Sherman, 30 Barb, 553); but in cases' where there is no fraud or clear excess of charter authority, injunction will not issue, particularly where the acts done have the distinct approval of the shareholders (Lord v. Copper Miners, 2 Phill., 741); and where an insurance company, formed for life and fire risks, sought to change their business. to marine risks, the court restrained them on the application of a shareholder, on the ground that it was a business not contemplated by the charter (Angell on Corp., 391).
In Baltimore & Ohio Railroad v. City of Wheeling, (13 Gratt., 40), an injunction was refused a stockholder against the use of funds for purposes not materially different from those designed by the charter, although such expenditure might be injurious to the stockholder.
And the court refused an injunction at the suit of a stockholder, to restrain one corporation from taking stock in another corporation, such taking not being ex *378 pressly authorized by charter (Hodges v. New England Screw Co., 1 and 3 Rhode Island); and in McGregor v. Dover & Deal Railway (16 Eng. L. & Eq., 180), the question arose, whether the transaction in that case was prohibited, and not whether it was in excess of the authority given the directors; and the case of Treadwell v. Salisbury Manufacturing Company is cited, where certain stockholders filed a bill to restrain a sale of all the property of the company to a new company for shares of stock to be distributed to stockholders of the old company. The court refused the injunction, and it is observed, 1 ‘ a limit may be put on a trading corporation by injunction, which would result in loss or destruction of its corporate property.”
And an injunction was refused in the case of State of Louisiana •». Hew Orleans & Jackson Railroad, where the question was the manner of making a • lease of the property of the company, pursuant to the vote of the directors. Ho fact being alleged showing a violation of law or any provision of the charter, or of the acquired rights of any party, the court, in the absence of any prohibition or regulation, would not interfere to control the manner in which the act was to be performed.
All corporations capable of' taking and holding property, have the Ujus disponendi” as fully as natural persons, except so far as they are restrained by law (State of California v. College of California, 38 Cal., 166).
. In the case at bar the defendants are a private corporation, and their codefendants are officers and directors thereof. The charter is conferred by law for the purpose of enabling the grantee to engage in trade and commerce. Like all corporations it is the creature of public policy and of statute, and although, in law, a private, it may in one sense be termed a public corporation. The stock is owned by individuals, but the franchise and its use are public. The acts of a corpora *379 tion are with a view to the interests of the share holders, bnt they are also expected to promote the public interests (Angell on Corp., § 32). And two great purposes are intended to be aided in these respects :
1. The active and useful employment of capital; and,
2. The promotion of trade, commerce, manufactures, and other legitimate objects.
The proposition of law on the part of the plaintiff may be assented to without touching the case, but no case can be found where the general management of corporate property has been subject to the restrictions of judicial power; unless, indeed, in the case of a clear violation of express law, or a wide departure from chartered powers; but such is not the case at bar; and the very great difficulty of an appropriate remedy by injunction, without at the same time subjecting the corporation to restrictions and losses which would terminate its career, must be apparent to all.
The plaintiff has not made out a case for the intervention of the court, and if he sustains damages by the illegal acts of the directors, he has, as before shown, an adequate remedy at law.
Let an order be entered denying the motion to continue the temporary injunction, and dissolving such injunction, with costs.