the appointment is made it becomes the duty of the appointing officer to inform the civil-service commission that the appointment was made in accordance with law. This being done, the statute enjoins upon the civil-service commission the duty of certifying the fact of such appointment to the comptroller, whose duty it is thereafter to make payment to the appointee of his compensation as he shall become entitled to it. This was not done, and therefore the comptroller had a right to insist upon a compliance with the statute. Relator's proper course was to have requested the civil-service commission to make the necessary certification, and had the request been refused it could thereafter have been enforced by mandamus. The application for a writ of mandamus should be denied, but without costs.

Application denied, without costs.

---

(11 Misc. Rep. 454.)

### SCHOUT v. CONKEY AVE. SAVING, AID & LOAN ASS'N.

(Supreme Court, Special Term, Monroe County. February, 1895.)

LOAN ASSOCIATIONS—WITHDRAWAL—ESTOPPEL TO SUE.

A stockholder of a loan association, which wrongfully loans to members money applicable to the claim of such stockholder on the withdrawal of his shares, of which he had given notice, is estopped to sue the association on that ground, where it appears that he was a director of the association, and attended meetings at which such loans were made, and approved thereof.

Action by Daniel Schout, Jr., against the Conkey Avenue Saving, Aid & Loan Association. Complaint dismissed.

F. B. & F. S. Hutchinson and H. J. Stull, for plaintiff.
Edwin McKnight and H. Nelson Peck, for defendant.

DAVY, J. This action is brought to recover $1,210.35, it being the amount credited to the plaintiff upon the books of the defendant for principal and dividends. It appears from the evidence that the plaintiff, who was a member of the defendant loan association, on the 16th day of December, 1891, filed a written notice withdrawing his moneyed interests in the association. Article 14, § 2, of the articles of association provides that members not having received a loan may withdraw one or more of their shares from the association at any time by giving notice in writing to the board, and the liability to pay further dues and the right to dividends shall cease with the filing of said notice. Applications for withdrawals shall only be received in the regular order of business, and the principal theretofore paid on such share or shares shall be refunded to such members as soon as necessary funds are in the treasury. The plaintiff bases his right to recover in this action upon the ground that the money which was in the treasury when his withdrawal notice was filed, instead of being applied upon his claim, was loaned to its members, contrary to the rules of the association. There can be no question but what the officers and members of the defendant were bound to observe the rules prescribed in its constitution and

by-laws, which were printed in a book issued to every shareholder, who was presumed to know what they were. The powers and duties therein expressed and imposed were binding upon the association and its members. The defendant therefore had no legal right to disregard them by appropriating any of the money in its treasury to the making of loans, while the plaintiff's ·withdrawal notice was on file, until his claim had been paid in full.

In the case of Wolfe v. Association, 75 Hun, 203, 27 N. Y. Supp. 44, which was an action against this same defendant, Dwight, P. J., says:

"The defendant had no right, under the article of its association, to appropriate any of its funds to the making of loans while withdrawal notices were on file which had not been honored."

The plaintiff, therefore, under the decision of the court in the case last cited, was entitled to the payment of his claim when reached, and if the directors disregarded the rules of the association, and loaned money to its members which should have been applied in payment of its indebtedness to the plaintiff, the defendant is liable in this action, unless the plaintiff has waived his right to the fund, or has done some act which, under the rules of equity, estops him from maintaining this action.

It appears from the evidence that at the time the loans were made the plaintiff was one of the directors of the defendant, and approved of the Ross loan, which he now concedes was made contrary to the rules of the association. He attended the meetings of the board from time to time during the period that the other irregular loans were being made. As a director, he had access to the books of the association at all times, and he knew, or ought to have known, that his associates were making the loans which he now contends were unauthorized. While directors, as a general rule, are not liable for errors of judgment, unless they are grossly wrong, yet, by accepting the trust, they are obliged to faithfully execute it. The plaintiff, therefore, by accepting the office of director, was required to execute it with fidelity and reasonable diligence. It was his duty to attend the meetings of the board with reasonable regularity, and to exercise ordinary diligence in ascertaining the financial condition of the association. He knew that the Ross loan, which received his approval, was irregular. That fact was sufficient to have put any prudent man, who was acting as a director, on his guard, and upon inquiry as to whether other loans of that character were being made. If he grossly neglected his duties, he cannot claim protection on that ground, but must be held, in the eyes of the law, just as responsible for the irregular loans as the other directors. The learned counsel for the plaintiff seeks to avoid the force of an equitable estoppel by claiming that the plaintiff was ignorant of these loans, with the exception of the Ross loan. The evidence in the case does not warrant me in reaching such a conclusion. It appears that he attended at least 15 meetings while he was a director, and one of the officers testified that he attended the meetings of the board regularly. It will not do to permit him to plead ignorance on the ground of neglect of

duty.  The rule is that an absent director may be held equally responsible with his associates, in case of extreme neglect of duty in omitting to attend the board meetings, or where the wrongful acts of his associates have come to his knowledge, and he acquiesces, and takes no steps to avert their injurious consequences, when, by due diligence, he might have prevented the wrongful acts from being done.   Knowlton v. Spring Co., 57 N. Y. 518–537; Knox v. Baldwin, 80 N. Y. 612; Robinson v. Smith, 3 Paige, 222; Hyatt v. Clark, 118 N. Y. 567, 23 N. E. 891; Adams v. Mills, 60 N. Y. 538; Lindner v. Sahler, 51 Barb. 323; Briggs v. Easterly, 62 Barb. 51; Bronson v. Dimock, 4 Hun, 614.

The law seems to be well settled that even a stockholder in a corporation, who participates in an unauthorized act prejudicial to his interest, and acquiesces in the transaction, is estopped from afterwards complaining, either in his own behalf or in the behalf of the corporation.   It was held in Sheldon, H. B. Co. v. Eickemeyer, H. B. M. Co., 90 N. Y. 612, that where stockholders, with full knowledge, ratify a transfer, and affirm the settlement, the act, though beyond the power given the trustees by the charter, could not be subsequently avoided by the stockholders or by the corporation. The learned judge who wrote the opinion of the court says:

"It is not needed, in such a case, that there be an express assent on the part of the stockholders to work an equitable estoppel.  When they neglect to promptly and actively condemn the unauthorized act, and to seek judicial redress after knowledge of the committal of it, this will be deemed an acquiescence in it."  Kent v. Mining Co., 78 N. Y. 159–187.

The rule in regard to directors is much more strict.  They are intrusted with the management of the corporate business, and are required to exercise the same degree of diligence and care that men of ordinary prudence and skill usually exercise in the management of similar business for themselves.  The business of the defendant could not be done except by its directors, who are required to exercise a general supervision over the affairs of the association. The shareholders had a right to assume that the directors would do their duty, and if they did not they had a right to hold them personally liable for a gross neglect of duty.  The law on this subject is clearly stated by Judge Earl in Hun v. Cary, 82 N. Y. 65. He says,

"The trustees are bound to observe the limits placed upon their powers in the charter, and if they transcend such limits, and cause damage, they incur liability."

He also says that:

"When one deposits money in a savings bank, or takes stock in a corporation, thus divesting himself of the immediate control of his property, he expects, and has a right to expect, that the trustees or directors, who were chosen to take his place in the management and control of his property, will exercise ordinary care and prudence in the trusts committed to them,— the same degree of care and prudence that men prompted by self-interest generally exercise in their own affairs.  When one voluntarily takes the position of trustee or director of a corporation, good faith, exact justice, and public policy unite in requiring of him such a degree of care and prudence, and it is a gross breach of duty not to bestow them."

If the plaintiff in this action had attended to his duties properly as a director, he certainly must have known the nature and extent of the business that was being transacted by the board, and that unauthorized loans were being made. It would be unjust, therefore, to permit him now to take advantage of his own negligent acts, to the injury of innocent shareholders who have filed their applications of withdrawal. In Knox v. Baldwin, supra, Judge Danforth says: "A director cannot be permitted, either alone or with his associates, to pursue a remedy which, if enforced, would enable him to profit by his own wrong or negligence." The plaintiff, therefore, is estopped from maintaining this action, and must wait until the defendant collects a sufficient sum to pay his claim as provided by its constitution and by-laws. The complaint, therefore, is dismissed, with costs. ·