(35 Misc. Rep. 517.)

### HANNA v. PEOPLE'S NAT. BANK OF SALEM et al.

(Supreme Court, Special Term, Saratoga County. July, 1901.)

1. CORPORATIONS — NATIONAL BANKS—STOCK—ASSESSMENT—FAILURE TO PAY—
SALE OF STOCK — CORPORATE LOSS — NEGLIGENCE OF DIRECTORS — STOCK-
HOLDERS' REMEDY—EQUITY SUIT.
    Where a national bank presently solvent sold out a former stockhold-
er's shares for his failure to pay an assessment thereon, made necessary
by the negligence or misconduct of its directors in loaning its funds to
irresponsible parties, such stockholder may maintain a suit on behalf of
himself and of others similarly situated against the bank and its direct-
ors, who permitted or caused the loss, to compel such directors to ac-
count to and pay him the value of his stock as it stood before the acts
of negligence or misconduct occurred.

2. SAME—ACTION BY CORPORATION.
    Where a bank sold a stockholder's shares for his failure to pay assess-
ments made necessary by losses occasioned by the negligence of the
directors, an action to recover the loss so sustained, which would ordi-
narily be brought against the delinquent directors by the corporation,
need not be brought by it, but may be brought by the stockholders
affected when the managing directors at the time are the ones charged
with the misconduct.

3. SAME—DIRECTORS' DUTIES — DELEGATION — DISCOUNT COMMITTEE — NEGLI-
GENCE—DIRECTORS' LIABILITY.
    Directors of a national bank are only required to exercise a reasonable
supervision over its affairs, and where they appoint from their number
a discount committee and an examination committee they shift the re-
sponsibility to such committees, and when during three years such com-
mittees permit the cashier of the bank to discount notes for a mere
dealer in cheap musical instruments, taken by him from parties not
shown to be responsible, which notes are frequently protested or renewed
to such an extent that his discounts finally cover two-thirds of the bank's
capital, the directors forming such committees are guilty of such negli-
gence and misconduct as would render them liable to stockholders in-
jured thereby.

4. SAME—ACTION BY STOCKHOLDERS—LIMITATION.
    An action by stockholders of a national bank against directors to re-
cover for negligence which occasioned a loss of the bank's capital may
be brought at any time within 10 years.

Action by David J. Hanna, for himself and others similarly situ-
ated, against the People's National Bank of Salem and certain di-
rectors, to recover for the loss of the value of the stock, alleged to
have been occasioned by the negligence and misconduct of the di-
rectors in loaning the funds of the bank to irresponsible parties.
Judgment for plaintiff.

Lansing & Holmes, for plaintiff.

J. S. Potter, S. W. Russell, and Abner Robertson, for defendants.

HOUGHTON, J. The plaintiff was a stockholder, prior to 1893,
in the defendant bank. The bank was organized in 1884, and by
December, 1893, had sustained such losses that an assessment was

made upon the stockholders for the full amount of their stock, in order to enable the bank to continue business. The capital stock of the bank was $50,000, and prior to the fall and summer of 1893 had apparently been doing a prosperous business for a bank of its character. On the 1st of January, 1893, it had an apparent surplus on hand of $5,100. By proper petition and order, stockholders James Donaldson, to whom stock was issued December 27, 1893; Cora M. Arnott, administratrix, etc., of William B. Maynard, deceased, to whom stock was issued July 25, 1892; Frank H. Vail, administrator, etc., of Platt G. Vail, deceased, to whom stock was issued December 4, 1893; and Clarrissa Piser, to whom stock was issued May 20, 1887,—have made themselves parties to the action. The plaintiff, Donaldson, and Arnott refused to pay the assessment, and their respective stocks were sold in 1894 to satisfy the same. Vail and Piser paid their assessments, and still hold their stock. The action is brought by the plaintiff in his own behalf and in behalf of all others similarly situated to recover from the directors of the bank for the loss of the value of his stock, which he claims was occasioned by the negligence and misconduct of the directors in loaning, or allowing to be loaned, funds of the bank to irresponsible parties, which brought about the necessity for assessment and sale of his stock. He joins the bank with the directors. The form of the action is in equity, and an accounting is asked if liability shall be determined.

The bank and the various defendants insist that the plaintiff is not in position to bring this action, because he has ceased to be a stockholder; and further claim that, because the corporation itself has not been requested to bring the action, even if the plaintiff were a stockholder, he would have no standing. The fact that the bank is now under the control of the directors whose acts and management are questioned permits the plaintiff to bring an action if he still retains sufficient character as stockholder to do so, for, under those circumstances, a stockholder has the right to bring such an action without a refusal on the part of the corporation to sue, because it is fair to assume that the delinquent directors would not permit a faithful prosecution of themselves. Robinson v. Smith, 3 Paige, 222, 24 Am. Dec. 212; Bloom v. Loan Co., 81 Hun, 123, 30 N. Y. Supp. 700, affirmed in 152 N. Y. 114, 46 N. E. 166; Brinckerhoff v. Bostwick, 99 N. Y. 185, 1 N. E. 663. Whether or not the plaintiff still occupies such a technical position of stockholder as enables him to bring an action in that capacity, there is some doubt. If, however, he lost his stock, as he alleges, through the negligent acts and mismanagement of the defendant, he must have some rights, and there must be some way in which he can enforce them. A receiver of the bank could not be appointed for the purpose of bringing such an action, because the bank is now solvent. The bank itself could not bring such an action against its directors, because its directors, which would set it in motion, are the ones charged with misconduct. It is stated by the court in Bloom v. Loan Co., 152 N. Y. 121, 46 N. E. 166, that in actions of this character the liability is not in equity, but at law. In any event, all of the facts which the plain-

tiff claims brought about the loss of his stock are stated in the complaint, and some of the plaintiffs are still stockholders, and I think it is proper to determine the questions upon the merits. One Robert M. Stevenson was the cashier of the defendant bank during the period complained of, and was elected such at the organization of the bank. The principal misconduct complained of on the part of the directors is the discounting of paper for one Benjamin G. Long, a dealer in musical instruments. Long resided in the city of Rutland, Vt., and sold musical instruments, principally organs, of a cheap kind, throughout southern Vermont and Washington county. Long's dealings with the bank began a little prior to 1890. He took notes from customers, discounted them at the bank, and paid them largely with renewals or new notes. From 1890 this character of paper was allowed to increase. In 1892 the bank held between $20,000 and $25,000 of paper of this character, and in 1893, on the failure of the bank, there was charged off to profit and loss $32,-609.84, represented by nearly 200 notes, ranging from $50 to $250 in amount. Many of the makers could never be found. In subsequent years occasionally a note was collected, or a part of others paid, so that the ultimate loss to the bank from this source was $22,968.05. Long had no visible property to any amount, and no store of any pretensions, occupying only a part of a store on one of the business streets of Rutland. No special attempt seems to have been made by any one connected with the bank to find whether the purchasers of the organs were responsible parties or not, and liable to pay their notes. All that seems to have been necessary to enable Long to get the money from the bank was to sell an organ to some one, and take his or her note, and send it to the bank, and it was promptly discounted. If it was not paid, it was renewed; and frequently when it was paid it was paid by another note instead of cash. Checks were frequently protested, and the notes were frequently protested. They were all discounted for Long's benefit, and, when the crash came in 1893, he was a virtual debtor of the bank to an amount equal to two-thirds the capital of the institution. The by-laws of the bank provided that the directors should meet weekly, but they only met twice a year. There was a committee, called the "discount committee," consisting of the president and three directors and the cashier, and their duties were to discount and purchase bills, notes, and other evidences of debt, to buy and sell bills of exchange, and report to the directors the bills and evidences of debt held by the bank at the weekly meetings of the directors. There was another committee, appointed by the board of directors, known as the "examining committee," consisting of three members of the board, who counted the cash, compared the assets and liabilities as shown upon the books, and whose duty it was to report every three months the condition of the bank, and recommend to the board such changes in the manner of doing business as were thought desirable. In January, 1889, there were elected 17 directors, and defendant Charles Lyon was thereafter elected president. The discount committee for the year 1891 was Charles Lyon, T. C. Gregory, William C. Larmon, and Franklin Stevens.

The discount committee for the year 1892 was the same. The discount committee for the year 1893 was Lyon, Larmon, William H. Cotton, and W. W. Cleveland. Stevens, Gregory, and Cleveland are not made parties to this action. Defendants Rogers and McNaughton were members of the examining committee from 1890 to the failure. The defendant Warren Kenyon was simply a member of the general board of directors.

The directors of a corporation are bound to exercise care and prudence in the execution of their trust to the same degree that men of common prudence ordinarily exercise in their own affairs. Hun v. Cary, 82 N. Y. 65, 37 Am. Rep. 546; Warner v. Penoyer, 33 C. C. A. 222, 91 Fed. 587, 44 L. R. A. 761. The ordinary care which the directors of a national bank must exercise includes something more than officiating as figureheads, and they are not absolved from the duty of reasonable supervision, nor shielded from liability, because of want of knowledge of wrongdoing, if that ignorance is the result of gross inattention. Briggs v. Spaulding, 141 U. S. 133, 11 Sup. Ct. 924, 35 L. Ed. 662. Members of a committee appointed for the special purpose of examining the affairs of the bank, or looking after the discounts, have a more active duty to perform than the general board of directors; and they are liable for losses resulting from the mismanagement of the cashier, which could have been ascertained by reasonable diligence. Warner v. Penoyer, 33 C. C. A. 222, 91 Fed. 587, 44 L. R. A. 761. The last case above cited was a reversal of the determination of the trial court with respect to the liability of members of the discount and examining committee, and affirmed the decision of the trial court as to nonliability of the general board of directors. The principle there enunciated with respect to the duties of directors is no stronger than, and is in accordance with, the principles enunciated in the opinion in Hun v. Cary, supra. In some respects the facts in Warner v. Penoyer, supra, are similar to those in the case at bar; for there, as here, the directors were farmers, having little experience in banking affairs, and trusted largely to their cashier. But, notwithstanding that, the court held that the members of the discount and examining committee were not excused from exercising ordinary care and prudence in the supervision of the acts of the cashier himself.

I think it cannot be said that the defendants who were members of either committee exercised the prudence which men commonly exercise in their own affairs in allowing a man like Long, a traveling organ peddler, to obtain a discount of over $30,000 upon notes of purchasers of his wares, unknown, or not known to be responsible. No man of any ordinary prudence would loan his own money in this manner. Notes of this character had been continually in the bank for years. It was not as though the cashier had made a large imprudent loan, but here were continuous loans of the same character, and large in number, and small in amount. Any ordinary care and the most common prudence would have put a stop to such extraordinary banking on the part of the cashier. A hundred, or 150, or 200 Long notes might well have made a bundle large enough to attract the dullest observation and excite the fears of the most phleg-

matic financier. The loss upon the other loans complained of I do not think any of the defendants are liable for. The purchase of securities of the Northwestern Guaranty Loan Company was not an unusual one at the time of the transaction.

The statute of limitation applicable is not three years, but ten years, and that plea of the defendants is ineffectual. Brinckerhoff v. Bostwick, 99 N. Y. 185, 1 N. E. 663.

The stock of the plaintiff James Donaldson was not issued to him until December 27, 1893, after all the acts that any one is claimed to be liable for had been done. The same is true of the stock of Vail, which was issued to him December 4, 1893. Neither of them is entitled to the relief asked for, because they were purchasers of their stock after all the damage to it had been done, and it was worthless. With respect to the stock of the others, it was proved that it was worth par, certainly at the beginning of the acts complained of.

The defendant Kenyon was not a member of either the discount or examining committee, and as to him the complaint is dismissed.

The plaintiffs Hanna, Arnott, and Piser each owned 10 shares, and each can recover from the defendants, other than the bank and Kenyon, one-fiftieth of the $22,968.05 lost by the discounts to Long, with costs. Decision and judgment may be prepared accordingly.

Judgment accordingly.