JAMES PEABODY & another *vs.* CHARLES F. FLINT & others.

A minority of the stockholders of a corporation may maintain a bill in equity in behalf of themselves and the other stockholders, for conspiracy and fraud, whereby their interests have been sacrificed, against the corporation and its officers and others who participate therein. By unreasonable delay, however, in bringing their bill, they will forfeit their title to equitable relief.

BILL IN EQUITY, brought March 9, 1860, by two stockholders of the Lowell and Salem Railroad Company, for themselves and in behalf of the other stockholders, against certain directors and agents of said company, and of the Lowell and Lawrence Railroad Company, whose railroad connected with that of the former company, and others, charging various acts of conspiracy and fraud, by which the interests of the stockholders in the Salem and Lowell Railroad Company were prejudiced and sacrificed, for the benefit of the Lowell and Lawrence Railroad Company; and especially in reference to false and fraudulent representations and practices for the purpose of injuring the credit of the Salem and Lowell Railroad, and enabling them to issue and take its bonds, on the 20th of August 1856, secured

by a mortgage of property of the company, at prices below their true value, and also in reference to a contract executed on the 1st of October 1858, by which the Lowell and Lawrence Railroad Company were to " do and perform all the transportation of persons and freight upon and over the Salem and Lowell Railroad," and to pretended settlements made between said companies. The bill also set forth that, since the plaintiffs had reason to suspect the frauds and conspiracies charged, they have demanded explanations of the defendants, petitioned the general court for an investigation, and endeavored to procure the election of directors who would cause the matters to be investigated, but, being in a minority, have failed to succeed. The defendants filed a general demurrer. The plaintiffs, at the argument, moved to amend their bill by joining the Salem and Lowell Railroad Company as defendants.

This case was argued in January 1862.

*J. G. Abbott & T. Wentworth,* for the defendants. This bill cannot be sustained by stockholders against the officers of the corporation. There is no direct injury to the stockholders. The interest of stockholders in the property of a corporation is derivative and indirect. They have no property in or title to any of the assets of the company. They cannot interfere with or affect them by any conveyance or act of their own. Their whole interest is regulated by statute law, and they can in no way sue for a wrong done to the property. The whole management of the affairs of corporations is carefully regulated by statute; the manner of voting is provided for; and every stockholder knows beforehand that he may be at the mercy of other stockholders. *Smith* v. *Hurd,* 12 Met. 371. *Abbott* v. *Merriam,* 8 Cush. 588. *Denny* v. *Manhattan Co.* 2 Denio, 115. The only possible remedy would be to bring a bill asking for an order to compel the corporation and its officers to bring an action in favor of the corporation. But before this could be done, the corporation must have fraudulently refused, upon request, to bring such action; which is not averred here. *Smith* v. *Poor,* 40 Maine, 415. *Hersey* v. *Veazie,* 24 Maine, 9.

*S. H. Phillips & J A Gillis,* ( *W. P. Webster* with them,) for

the plaintiffs. The bill is brought by proper parties. Story Eq.
Pl. §§ 94, 107, 109. *Crease* v. *Babcock*, 10 Met. 525. *Heath* v.
*Ellis*, 12 Cush, 601, 604. *West* v. *Randall*, 2 Mason, 181, 193.
*Robinson* v. *Smith*, 3 Paige, 222, 233. *Mann* v. *Butler*, 2 Barb.
Ch. 262. *Wood* v. *Draper*, 24 Barb. 187. *March* v. *Eastern
Railroad*, 40 N. H. 548. *Dodge* v. *Woolsey*, 18 How. (U. S.)
331. *Good* v. *Blewitt*, 13 Ves. 397. *Cockburn* v. *Thompson*, 16
Ves. 321, 327. *Colman* v. *Eastern Counties Railway*, 10 Beav. 1,
The bill discloses a case for equitable relief. *Salomons* v. *Laing*,
6 Railw. & Canal Cas. 303. *Bagshawe* v. *Eastern Union Rail-
way*, Ib. 152. *Hodges* v. *New England Screw Co.* 1 R. I. 312.
*Kean* v. *Johnson*, 1 Stockton, (N. J.) 401. *Gray* v. *Chaplin*, 2
Sim. & Stu. 267.

CHAPMAN, J. The bill sets forth a very complicated case. A
full consideration of the charges of fraud which it contains would
involve the necessity of examining the various legislative acts
which it recites, and the contracts and dealings which it sets
forth. But such a discussion is unnecessary.

The principal ground of demurrer relied on by the defendants
is, that the plaintiffs have not, and never had, any remedy
for such injuries as they complain of; that, conceding the
truth of the allegations that the directors of the Salem and
Lowell Railroad Company, either by themselves or with the
consent and connivance of a majority of their stockholders, com-
bined, either among themselves, or with the Lowell and Law-
rence Railroad Company or its directors, or with any of the
other defendants, to defraud a minority of the stockholders of
the Salem and Lowell Railroad Company, and in pursuance of
this combination did the acts alleged, and so dealt and man-
aged as to destroy the value of the stock as set forth, yet the
only relief which the minority can have is the very imperfect
one of selling out their stock for what it will bring in market.
This doctrine is said to result from the nature of corporate prop-
erty, which, being owned absolutely by the corporation, is under
the absolute control of a majority of the stockholders, and of such
directors as they choose to elect. Their decisions and acts, it is
said, are final, and the minority are bound to submit to them.

But this doctrine, if correct, would place the property of stockholders in a corporation in a perilous condition.  For it would enable the managers of one corporation to get the control of another by the purchase of a majority of its stock for the purpose, and then to manage its affairs in such subservience to the interests of their own corporation, as to render the stock of the minority worthless, and avail themselves of its value without compensation.  The demurrer concedes, for the purposes of this discussion, that the managers of the Lowell and Lawrence Railroad Company have thus acted in respect to the minority of stockholders in the Salem and Lowell Railroad Company.  It requires no great sagacity to see how similar frauds may be practised· in behalf of many other railroads against connecting or rival roads, so that a system of railroad connections may become a system of frauds.  If it may be practised with impunity between railroad corporations, it may also be practised between manufacturing corporations, and a managing majority may, at their pleasure, sacrifice the interests of the minority for the benefit of another corporation owned by them.  The same remark is true in respect to several other classes of business corporations. The question thus presented is of great importance, because there is no known practicable method of establishing and managing railroads except by means of corporations; and many other great enterprises and branches of business which require, for their successful prosecution, a large and permanent investment of capital, are also usually and most conveniently established and managed by means of corporate organizations.

This doctrine is also said to result from the nature of corporations and corporate property, as stated in *Smith* v. *Hurd*, 12 Met. 371.  The views taken in that case are unquestionably correct; and they apply with especial force to that class of corporations whose stockholders have little more power than to elect officers, who, when elected, are invested by law with the sole and exclusive power of managing the concerns and business of the corporation.  The corporation itself is regarded as a distinct person; and its property is legally vested in itself, and not in its stockholders.  As individuals, they cannot, even by joining

together unanimously, convey a title to it, or maintain an action at law for its possession, or for damages done to it. Nor can they make a contract that shall bind it, or enforce by action a contract that has been made with it. The artificial person called the corporation must manage its affairs in its own name, as exclusively as a natural person manages his property and business. The officers, though chosen by vote of the stockholders, are not their agents, but the agents of the corporation ; and they are accountable to it alone. Therefore one or more of the stockholders cannot maintain an action at law against the officers for any breach of official duty that injures the corporate property as a whole. An injury done by the directors of a company to an individual by inducing him to become a member of the company by means of false representations is actionable, because it is an injury to him and not to the company. *Gerhard* v. *Bates,* 2 El. & Bl. 476. But the interest of stockholders is, as stated in *Smith* v. *Hurd,* cited above, merely a qualified and equitable interest.

But if there is an equitable interest, there must result from it equitable relations and equitable rights; and these rights may be enforced by equitable remedies. As between the corporation itself and its officers, it was long since held that they were trustees, and that a court of equity would hold them responsible for every breach of trust. *Charitable Corporation* v. *Sutton,* 2 Atk. 400. The corporation itself holds its property as trustee for the stockholders, who have a joint interest in all its property and effects, and each of whom is related to it as *cestui que trust.* The corporation may call its officers to account if they wilfully abuse their trust, or misapply the funds of the company; and if it refuses to sue, or is still under the control of those who must be made defendants in the suit, the stockholders who are the real parties in interest may file a bill in their own names, making the corporation a party defendant; or a part of them may file a bill in behalf of themselves and all others standing in the same relation, if convenience requires it. *Robinson* v. *Smith,* 3 Paige, 222, and cases there cited. See also the other authorities cited for the plaintiffs on this point; and *Hersey* v. *Veazie,*

24 Maine, 9, and *Smith* v. *Poor*, 40 Maine, 415, cited by the defendants.

If other parties have participated with the officers in such proceedings, they may, according to the established principles of equity pleading, be joined as parties. In the discovery of frauds, and in furnishing remedies to parties defrauded, equity does not suffer technicalities to stand in its way, but seizes upon the substance of the case, and holds all parties to their just responsibility, following trust property into the hands of remote grantees and purchasers who have taken it with notice of a trust, in order to subject it to the trust. The objection, therefore, that a court of equity has no power to furnish a remedy in a case of this character, is untenable.

But there is another objection to the bill which must prevail. Equity regards diligence as one of its important elements; and it discountenances laches as inequitable; and unreasonable delay to prosecute an existing claim is a bar to a bill in equity, especially when the parties cannot be restored to their original position, and injustice may be done. *Veazie* v. *Williams*, 3 Story R. 610. *Tash* v. *Adams*, 10 Cush. 252. *Fuller* v. *Melrose*, 1 Allen, 166. Story on Eq. § 1520 and note 3.

In this case there has been unreasonable delay. The bill was sworn to March 9, 1860. The mortgage complained of was executed August 20, 1856, and the lease to the Boston and Lowell Railroad Company, October 1, 1858. The contracts and dealings to be investigated and readjusted commenced in 1850, and continued till the execution of the mortgage, and even to the execution of the lease in 1858. Every day's delay increased the complication and the difficulty of making an equitable adjustment of them. In the mean time, the stock in the corporations must have been frequently changing hands, and there are no means of adjusting the equities growing out of such changes. A similar remark is applicable to the holders of the bonds secured by the mortgage. The nature of the case required the utmost diligence, in order to prevent injustice. Yet the plaintiffs delayed more than three years and a half after the making of the mortgage, and until after they had sought aid

from the legislature. It does not appear that they had not at that time sufficient knowledge of the facts to enable them to prosecute, or that they have since gained any important information; and a decree such as they now seek may injuriously affect many persons who have become stockholders or bondholders during the period of this delay. For this reason the demurrer is sustained, and the bill dismissed.