NEW BRIG (DAVIS v.). See Case No. 3,643.

NEW BRIG (HARPER v.). See Case No. 6,090.

NEW BRUNSWICK CARPET CO. (WEBSTER v.). See Cases Nos. 17,337 and 17,338.

NEWBURY (MOORE v.). See Case No. 9,772.

## Case No. 10,144.

NEWBY v. OREGON CENT. RY. CO. et al.

[Deady, 609;[1]  Cox, Manual Trade-Mark Cas. 180.]

Circuit Court, D. Oregon. Aug. 3, 1869.

CORPORATIONS—NAME AS A TRADE-MARK—RIGHT TO SUCH NAME—JURISDICTION OF EQUITY TO ENJOIN ITS USE.

1. The corporate name of a corporation is a trade-mark from the necessity of the thing, and upon every consideration of private justice and public policy deserves the same consideration and protection from a court of equity.
[Cited in State v. McGrath (Mo. Sup.) 5 S. W. 30.]

2. A corporate name is a necessary element of a corporation's existence, and any act which produces uncertainty or confusion concerning such name, is well calculated to injuriously affect the identity and business of the corporation.
[Cited in Wells v. Oregon Ry. & Nav. Co., 15 Fed. 567.]
[Cited in State v. McGrath (Mo. Sup.) 5 S. W. 30.]

3. The right to a corporate name does not rest in parol, but is shown by the record and is triable by inspection thereof in any form of proceeding—therefore a court of equity will not refuse to enjoin the use of such name because the right to the same has not been established at law.
[Cited in American Order of Scottish Clans v. Merrill, 151 Mass. 562, 24 N. E. 919; Ft. Pitt Bldg. & Loan Ass'n v. Model Plan Bldg. & Loan Ass'n, 159 Pa. St. 311, 28 Atl. 215.]

4. The jurisdiction to enjoin the use of a corporate name does not depend upon the insolvency of the defendant.

5. The insolvency of a corporation, the legality of the subscription to its capital stock, and the validity of its organization generally, may be judicially investigated, whenever and wherever such investigation becomes material to the determination of the rights of third persons, who are parties to a judicial proceeding before the court.
[Cited in Re Oregon Bulletin Printing & Publishing Co., Case No. 10,560.]

6. Where a creditor of a corporation, as a bondholder, has a lien upon a grant of land or other property owned or claimed by such corporation, and another corporation is wrongfully using such corporation's name for the purpose of obtaining such grant of land, such creditor may maintain a suit in equity to enjoin such other corporation from such wrongful use of his corporation's name.

7. An agreement by a corporation to prefer its bondholder in the disposition of 50 per centum of the proceeds of its lands, which may be sold before such bond becomes due, does not give such bondholder a lien upon the corporation lands.

8. Quere, can a mere bondholder of a corporation maintain a suit to enjoin another corporation from doing unlawful acts which depreciate the conventional value of such bond in the market.

9. In a suit to enjoin the use of a corporate name, the corporation whose name is alleged to be wrongfully used must be a party plaintiff or defendant, but if such corporation refuse to bring such suit upon request, its bondholder or creditor may do so, and make such corporation a party defendant.

[10. Cited in Nebraska Loan & Trust Co. v. Nine, 27 Neb. 512, 43 N. W. 349, to the point that a geographical name cannot become the subject of property as a trade-name, unless coupled with words which qualify the general geographic term.]

[This was a bill in equity by James B. Newby against the Oregon Central Railway Company, George L. Woods, E. N. Cooke, J. H. Douthitt, J. R. Moores, Thomas M. F. Patton, John H. Moores, Jacob Courser, A. Laurence Lovejoy, F. A. Chenoweth, Stukeley Ellsworth, Stephen F. Chadwick, John E. Ross, J. H. D. Henderson, John F. Miller, Absalom F. Hedges, Samuel B. Parrish, and Green B. Smith.]

W. Lair Hill, for complainant.
Joseph N. Dolph, for defendants.

DEADY, District Judge. This suit is brought to enjoin the defendants from using the name "The Oregon Central Railway Co." and from issuing bonds bearing said name. It was commenced on February 9, 1869. The defendants on April 5, filed ten exceptions to the complainant for impertinence, which exceptions, after arguments by counsel, were disallowed on April 12th thereafter. On May 3, 1869, the defendant corporation demurred to the complaint, as did the other defendants, by a separate and similar demurrer. On May 15 and 22 the demurrer was argued by counsel and the cause submitted to the court for determination.

Substantially, the allegations of the complaint are as follows:

(1) That the complainant is a citizen of California and the defendants are all citizens of Oregon.

(2) That the corporation defendant was organized about April 22, 1867, under the laws of the state of Oregon, with its place of business at Salem, for the purpose, as expressed in its articles, of constructing and operating a railway for the transportation of passengers and freight from Portland in a southerly direction about three hundred miles, to the northern line of the state of California.

(3) That long prior to the incorporation of such defendant corporation, another corporation was duly incorporated under the laws of Oregon, under the name of "The Oregon Central Railway Co.," for the purpose as expressed in its articles of constructing and operating a railway from Portland, in a southerly direction, about three hundred miles, to the northern line of the state

[1] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

of California, under the laws of Oregon and the act of congress, approved July 25, 1866 [14 Stat. 239], entitled "An act granting lands to aid in the construction of a railway and telegraph line from the Central Pacific Railway to Portland, Oregon," and the amendments thereto; and that about October 1, 1866, the articles of this corporation were published in full in sundry newspapers then published in Portland, Salem, Eugene, and elsewhere in Oregon, and that about October 11, 1866, the legislative assembly of Oregon, after hearing the articles of this corporation read before it, and upon the application of said corporation, did, by the passage of a joint resolution, namely, house joint resolution No. 13, designate and appoint this corporation to receive and manage so much of the land and franchises proposed to be granted by said act of congress, as should lie within the state of Oregon, which designation and appointment was in all respects regular and in accordance with said act of congress.

(4) That thereafter, and within the time prescribed by said act of congress, said last named corporation duly gave its assent to the terms proposed by said act, which assent was duly filed with the secretary of the interior of the United States; and such corporation is now proceeding to construct said railway as by said act required, in order to receive the benefits arising therefrom; and that said act of congress among other things provided, that the company complying with the conditions thereof and being designated therefor by the assembly aforesaid, should receive twenty sections of the public land within the state of Oregon for each mile of such railway, to aid in the construction thereof, together with the right of way, and other valuable privileges, in the public lands along the line of said railway.

(5) That by reason of the matters aforesaid, the last named corporation became possessed of valuable franchises and rights, in consideration of which its credit was established in the principal money markets of the world, so that its bonds and obligations became valuable and marketable commercial paper, by means whereof it was enabled to meet its obligations incurred in the construction of said railway; and that on June 25, 1868, said act of congress was amended so as to extend the time for the completion of the first and the subsequent sections of said railway; and that said corporation will be able to comply with said act of congress, and be entitled to receive the land and other franchises proposed to be granted thereby.

(6) That said last named corporation, for the purpose of raising money to construct said railway, issued bonds of the denomination of $1,000 each, payable in gold coin, to bearer, on January 1, 1869, with forty-one interest coupons attached to each of said bonds, which coupons were payable to bearer, and for the sum of $35 each, that being the amount of the semi-annual interest on each of said bonds at the rate of seven per centum per annum; and that such bonds were put in market and sold as all such other securities are sold, and that this complainant then and there became the purchaser and is now the holder and owner of two of said bonds; and that said bonds are secured by a first mortgage upon all the real and personal property of said corporation—excepting the subscriptions to the stock thereof—and upon all its rights under said act of congress, and fifty per centum of the proceeds of any land sold by said corporation before said bonds fall due, and that by reason thereof the complainant's bonds are the most valuable of said corporation's obligations, and would be of great market value but for the wrongful acts of the defendants, as hereinafter stated.

(7) That on about April 22, 1867, certain of the corporators of the last named corporation seceded therefrom and confederated and conspired with other persons for the purpose of defrauding and injuring said corporation, and in pursuance thereof said corporators and other persons, executed the articles of incorporation of the defendant corporation herein, and incorporated and proceeded to organize the same, by the corporate name of "The Oregon Central Railway Co."—that being the name of the corporation designated by said resolution No. 13, as aforesaid; and that the incorporators of said defendant corporation then and there well knew and were duly notified of the prior incorporation of the corporation designated by said resolution No. 13, under the name aforesaid, and of its rights and franchises aforesaid, and that the incorporation of another corporation under the same name would greatly injure the credit of said prior incorporation and depreciate its bonds in the money markets, by causing confusion and misunderstanding as to which corporation was entitled to the rights and benefits guaranteed to "The Oregon Central Railway Co." under said act of congress and resolution No. 13.

(8) That said defendant corporation has fraudulently issued a large number of bonds similar in appearance and purporting to be the bonds of "The Oregon Central Railway Co.," and to be secured by a first mortgage upon all the property of said company—except subscriptions to its capital stock—and upon its rights and franchises, and put the same upon the market as the bonds of said O. C. R. Co.; and that said last mentioned bonds were wrongfully issued for the purpose of depreciating and preventing the sale of the bonds of the corporation designated by said resolution No. 13, and destroying their character as marketable securities; and that by reason of the wrongful and fraudulent acts aforesaid, the market value of the complainant's bonds has been greatly reduced, and the same rendered unmarketable; and that said

acts have caused the public, particularly bankers and the like, to believe and suspect that the defendant corporation is the one designated by said resolution No. 13, and that said wrongfully issued bonds, and not the complainants, are secured by the mortgage by which the complainant's bonds are in fact secured; and that the putting of said wrongfully issued bonds upon the market as aforesaid, as the bonds of the O. C. R. Co. will cause further depreciation of your complainant's bonds, and cast confusion and suspicion upon and about the bonds of the corporation designated by said resolution No. 13.

(9) That said defendant corporation, by its officers, is threatening to issue, and unless restrained by the court, will issue a large amount more of its bonds, purporting to be the bonds of the O. C. R. Co., and to be secured as aforesaid, by which complainant's bonds will be further depreciated and their market value destroyed to his damage not less than $1,000.

(10) That the personal defendants above mentioned are all directors of the defendant corporation.

(11) That after the articles of incorporation of the defendant corporation were executed and filed, six of the corporators thereof subscribed $100, or one share each of the capital stock, and then passed a resolution that the president subscribe all the rest of the stock in the name of and for the corporation, there being then in fact no president, and thereupon, after George L. Woods, as president, had pretended to subscribe said stock as directed, said corporators proceeded to organize said corporation by the election of directors, and the pretended directors, so elected, then elected said Woods president, but that no other subscription to said capital stock has ever been made; and that said defendant corporation has no other property than the six shares of capital stock, subscribed as aforesaid, and is therefore wholly unable to respond to complainant in damages.

With prayer of special relief as follows: That the defendants be perpetually enjoined from the further use of the name, "The Oregon Central Railway Co.," and from issuing any more of such bonds, and such other and further relief, etc.

The causes of demurrer assigned in the demurrers of record substantially are: 1. That the bill is defective because it does not contain a prayer for process. 2. That the complainant has a plain and adequate remedy at law. 3. That it does not appear that the legal right of the last named corporation to the name—"The Oregon Central Railway Co."—has been established at law. 4. That complainant has not sufficient interest in the subject matter to maintain this suit or to the relief prayed for. 5. That the bill does not state facts sufficient to constitute a cause of suit. 6. That the complainant by his bill has not shown a case for relief in equity against the defendants. On the argument the following additional causes of demurrer were assigned ore tenus: 7. That it does not appear from the bill, that said last named corporation had refused to institute this suit, and therefore it should have been brought in the name of said corporation. 8. That this court has no jurisdiction of this suit because the subject matter in dispute does not exceed the value of $500.

By the law of Oregon any three or more persons may incorporate themselves for the purpose of engaging in any lawful enterprise or occupation. The primary step in the formation of this legal entity is the execution and filing of articles of incorporation, which articles, among other things, must specify— "The name assumed by the corporation and by which it shall be known." Code Or. 658, 659. By the execution and filing of these articles, the corporate name assumed thereby and specified therein, becomes exclusively appropriated. If afterwards any persons attempt to incorporate for any purpose by the same name, this would be an encroachment upon the rights of the first corporation, and therefore illegal. To prevent the continuance of such a wrong upon the rights of another equity will interfere at the suit of the injured party, by injunction. The case is analogous to if not stronger than that of a piracy upon an established trade mark. Bell v. Locke, 8 Paige, 75; Taylor v. Carpenter, 11 Paige, 292; Partridge v. Menck, 2 Barb. Ch. 102; Will. Eq. Jur. 402, 403. The corporate name of a corporation is a trade mark from the necessity of the thing, and upon every consideration of private justice and public policy deserves the same consideration and protection from a court of equity. Under the law, the corporate name is a necessary element of the corporation's existence. Without it, a corporation cannot exist. Any act which produces confusion or uncertainty concerning this name is well calculated to injuriously affect the identity and business of a corporation. And as a matter of fact, in some degree at least, the natural and necessary consequence of the wrongful appropriation of a corporate name, is to injure the business and rights of the corporation by destroying or confusing its identity. The motives of the persons attempting the wrongful appropriation are not material. They neither aggravate or extenuate the injury caused by such appropriation. The act is an illegal one and must, if necessary, be presumed to have been done with an intent to cause the results which naturally flow from it. Nor will a court of equity refuse to enjoin the wrongful appropriation of a corporate name until the right of the first corporation to the name has been established by the verdict of a jury in an action at law. Such right does not rest in parol but is shown by the record, if at all, and is determined by the court in any form of proceeding. Neither in such case, has the party injured an adequate and complete remedy at law. As in the case of patents for

inventions and copyrights, the remedy at law can only give redress for the past injury, and that often inadequately. But to protect the injured corporation from the mischief arising from continued violation of its rights and perpetual litigation concerning them, resort must be had to the equitable remedy by injunction. 2 Story, Eq. Jur. § 930.

Nor do I deem it material. in this case to the jurisdiction in equity, that the defendant should be insolvent—unable to respond to the complainant in damages. The jurisdiction in this class of cases—trade marks, patents and copyrights—depends upon the fact that the matter is intrinsically of equitable cognizance—that the legal rights of the party can only be protected in equity, and not upon the uncertain and irrelevant test of the insolvency of the defendant. For this reason as well as the conclusion I have reached upon the rights of this complainant to maintain this suit, without the O. C. R. Co. being made a party thereto, it is not necessary to consider the question made in the complaint as to the insolvency of the defendant corporation upon the grounds of the alleged illegality of the subscription to its capital stock and the irregularity of its organization. It will not be out of place, however, to remark in passing, particularly after the argument of counsel for defendant upon that point that if any such question were to become material in this suit, for the purposes of this suit, it could be investigated and determined here as well as in any other proceeding. There is no divinity that doth hedge about the affairs of a corporation so as to preclude a judicial investigation of the facts concerning it, whenever and wherever such investigation becomes material to the determination of the rights of third persons. For instance, if it were necessary for the maintenance of this suit for the complainant to show that this defendant or any other corporation was insolvent, he would be allowed to do so, even if it were necessary in so doing to show that its capital stock was illegally subscribed or that its organization was invalid. The age or solvency of A B may become material questions in a suit to which he is not a party and in which he has no interest, but that does not preclude the parties interested and litigant from investigating the matter for the purposes of their controversy.

And this brings me to the consideration of the questions—has the complainant such an interest in the subject of this controversy as entitles him to maintain this suit; and if this question is answered in the affirmative, can he maintain the suit without making the O. C. R. Co. a party plaintiff or defendant. It being admitted by the demurrer that the complainant is a bondholder and a creditor of the O. C. R. Co., and that the corporation defendant has wrongfully appropriated the corporate name of said corporation, and is issuing bonds in said name, and is seeking by the wrongful use of such name to obtain the land granted to the O. C. R. Co., if it also appeared unqualifiedly that the bonds of the complainant were secured by a mortgage upon land granted by act of congress to the corporation designated by the resolution No. 13, I think he would have such a special interest in that property as would entitle him to maintain a suit to prevent another corporation from obtaining the same land by the wrongful use of the name of the corporation whose bonds he holds. Bradley v. Richardson [Case No. 1,786]. But upon this point the complaint is equivocal, or at least indistinct. It does not directly state that this land is mortgaged to secure the payment of the complainant's bonds. True, it is averred that the mortgage is upon all the property of the corporation; except subscriptions to its capital stock. What other property, if any, than these subscriptions and this land the corporation claims, is not shown. Now, as to the land, the complaint states specially that the mortgage is upon the rights of the corporation under the act of congress, and upon fifty per centum of the proceeds of such of the lands thereby granted as may be sold before the bonds become due in 1889. Waiving the question of whether the corporation can mortgage these lands before the performance of the conditions on which the grant was made, and before they are selected and separated by the proper authority from the body of the public lands, this allegation rather indicates an agreement by the corporation in the disposition of the proceeds of this land sold before 1889, to prefer its bond creditors as to fifty per centum thereof, than a mortgage upon the land itself.

But counsel for complainant does not rest his right to relief upon this ground alone. He maintains that the complainant is something different from, and more than, a mere creditor of the O. C. R. Co., secured by a lien upon its property. That he is also the owner of its bonds—a species of obligation or security, which, in the progress of society and business, have acquired a conventional value, as property. That this conventional value depends upon the state of public opinion as to the resources and prospects of the corporation that issued these bonds, and thereby created this property; and that the issuing of similar bonds in large numbers, in the name of the O. C. R. Co. by the defendant corporation, works an injury to the complainant by diminishing the conventional or market value of his property. This argument is not without force and plausibility. No authority has been cited, however, in support of the conclusion, and I do not deem it necessary to express an opinion at this time upon the question made by it. For, admitting that the complainant is entitled against the defendants to the relief prayed for, either on the ground of his being the owner of the O. C. R. Co.'s bonds, or a creditor of such corporation with a lien upon its lands for security, yet I am satisfied that this suit

cannot be maintained without the O. C. R. Co. being made a party, plaintiff or defendant. Upon authority and principle, the corporation whose name is alleged to be wrongfully assumed and used, must be a party to the suit. If such corporation refuses to bring the suit after being requested to do so, the complainant may sue, and alleging the fact in his complaint, make the corporation a party defendant. Robinson v. Smith, 3 Paige, 232; Dodge v. Wolsey, 18 How. [59 U. S.] 331. The demurrer ore tenus, for want of proper parties is therefore allowed upon payment by the defendants of the costs of the demurrer on the record. 3 Paige, supra.

[NOTE. Afterwards the plaintiff amended his bill by leave. The defendants both demurred, and pleaded to the amended bill. The case was heard upon demurrer and pleas, and the bill dismissed. Case No. 10,145.]